COMPAÑIA GENERAL DE TABACOS DE FILI- PINAS *v.* ALHAMBRA CIGAR & CIGARETTE MANUFACTURING COMPANY.

APPEAL FROM THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 180.　Submitted January 22, 1919.—Decided March 3, 1919.

An appeal from the Supreme Court of the Philippine Islands perfected before the Act of September 6, 1916, is governed by § 248 of the Judicial Code, which gives this court jurisdiction in all cases in which any treaty of the United States is involved. P. 75.

A decision of the Supreme Court of the Philippines that the name "Isabela" is a geographical and descriptive term not subject to registration as a trade-name under the law before or since the cession of the Islands, and that its use as a designation of cigars and cigarettes was not unfair competition, and that the suit was not for infringement of a trade-name, "La Flor de la Isabela," registered under the Spanish regime, *held* not to involve the provisions of the Treaty of Paris of 1898, Arts. VIII and XIII, providing that the cession shall not impair property rights previously acquired, and that rights of property secured by copyrights and patents acquired by Spaniards in the Islands shall be continued and respected.  P. 75.  *Ubeda* v. *Zialcita,* 226 U. S. 452, distinguished.

Appeal to review 33 Phil. Rep. 485, dismissed.

THE case is stated in the opinion.

*Mr. F. C. Fisher* for appellant.

*Mr. Harry W. Van Dyke* for appellee.  *Mr. Edmund W. Van Dyke* was also on the brief.

MR. JUSTICE DAY delivered the opinion of the court.

Suit was brought by the appellant, a corporation organized under the laws of Spain, in the Court of First Instance of Manila.  The complainant set up that for more than twenty-seven years it had been engaged in the business of manufacturing cigars and cigarettes in the Philippine Islands.  That its factory is known as "La Flor de la Isabela," which name is used upon the packages and containers of the products manufactured by complainant and on the advertising matter in its cigar and cigarette business.  That on April 5, 1887, the Kingdom of Spain as the sovereign authority in the Philippine Islands issued to it, under laws then in force, a certificate of registration and ownership of certain trade-marks and trade-names and label designs therein described and enumerated, including the trade-name "La Flor de la

Isabela" conferring the right upon the complainant to all the benefits appurtenant thereto, including the right to prosecute for infringement. That the trade-name has been in continuous use solely by the complainant from the issuance of the Spanish certificate of registration and ownership to the time of bringing suit, except for the acts of the appellee. That by reason of the long-continued use of the phrase "La Flor de la Isabela" to designate its factory and its products the said phrase and sundry abbreviations thereof when applied to the manufactures of tobacco as a distinguishing brand or name had come to have a secondary meaning designating and denoting that they are the products of its factory. In common parlance the name "La Flor de la Isabela" is abbreviated to "Isabelas" when applied to cigars or cigarettes. That on or about the first of June, 1914, the defendant, now appellee, a corporation organized under the laws of the Philippine Islands, engaged in the manufacture and sale of cigars and cigarettes in Manila and elsewhere in the Philippine Islands, unlawfully misappropriated to its own use and benefit the word "Isabelas" in its secondary meaning as a distinguishing brand or name of its tobacco products. That the unlawful use of the name "Isabelas" as the distinguishing brand or name of the products of the defendant is calculated to deceive the public into the belief that the goods of the defendant so designated and branded are the goods manufactured by the complainant, and that the use thereof by the defendant will cause it irreparable injury. An injunction was prayed against the defendant, and an accounting sought.

The Court of First Instance found in favor of the complainant because of its exclusive ownership of the Spanish trade-mark, and in favor of the defendant on the question of unfair competition. Upon appeal to the Supreme Court of the Philippine Islands, that court found in favor of the defendant upon both issues, and directed a reversal of the

judgment below.  33 Phil. Rep. 485.  Appeal to this court was sought and allowed upon the ground that the judgment of the Supreme Court was in an action which involved the Paris Treaty of 1898 between the United States and Spain, because it is therein provided that the property rights of private establishments or associations having legal capacity to acquire and possess property, and especially the rights of property secured by copyrights and patents acquired by Spaniards in the Philippine Islands at the time of the ratification of the treaty, shall not be impaired, but shall continue to be respected.

This appeal was perfected before the Act of September 6, 1916, 39 Stat. 726, and is controlled by § 248 of the Judicial Code, which provided that this court should have jurisdiction to review, revise, reverse, modify or affirm the final judgments and decrees of the Supreme Court of the Philippine Islands in all actions, cases, causes, and proceedings in which the Constitution, or any statute, treaty, title, right, or privilege of the United States is involved.

The contention is that the provisions of this treaty were involved in the decision of the Supreme Court, thereby authorizing this appeal.

By the Treaty of Paris of 1898, Spain ceded to the United States the archipelago known as the Philippine Islands.  In Article VIII of the treaty it is provided that the relinquishment or cession, as the case may be, "cannot in any respect impair the property or rights which by law belong to the peaceful possession of property of all kinds, of provinces, municipalities, public or private establishments, ecclesiastical or civic bodies, or any other associations having legal capacity to acquire and possess property in the aforesaid territories renounced or ceded, or of private individuals, of whatsoever nationality such individuals may be."  Article XIII provides that "The rights of property secured by copyrights and patents ac-

quired by Spaniards in the Island of Cuba and in Porto Rico, the Philippines and other ceded territories, at the time of the exchange of the ratifications of this treaty, shall continue to be respected." Treaties in Force, 1904, pp. 722, 725, 726. [30 Stat. 1754.]

It is the evident purpose of these provisions, in view of the cession of territory made by Spain to the United States, to preserve private rights of property, and to provide that the change of sovereignty should work no impairment of such rights.

The Philippine Act of 1902, carried into the section of the Judicial Code which we have quoted, intended to give this court jurisdiction in cases involving rights secured by the Treaty of 1898 and other treaties of the United States. A good illustration of a case of this character is found in *Vilas* v. *Manila*, 220 U. S. 345, where certain claims were made against the City of Manila, which it was contended survived, notwithstanding the cession to the United States. A writ of error was sued out to a judgment of the Supreme Court of the Philippine Islands denying relief because of its holding that the municipality of Manila after the treaty was a totally different corporate entity and in nowise liable for debts created under the Spanish sovereignty. Exception was taken to the jurisdiction, but this court held that the case involved the Treaty of 1898, as the question was made to turn in the court below upon the consequence of the change of sovereignty and the reincorporation of the city after the substituted sovereignty. Mr. Justice Lurton, who delivered the opinion of the court, said: "This disposes of the question of the jurisdiction of this court grounded upon the absence from the petition of the plaintiffs of any distinct claim under the treaty of Paris, since under § 10 of the Philippine Organic Act of July 1, 1902, this court is given jurisdiction to review any final decree or judgment of the Supreme Court of the Philippine Islands where any treaty of the

United States 'is involved.' That treaty was necessarily 'involved,' since neither the court below nor this court can determine the continuity of the municipality nor the liability of the city as it now exists for the obligation of the old city, without considering the effect of the change of sovereignty resulting from that treaty. See *Reavis* v. *Fianza*, 215 U. S. 16, 22."

In this case no such question is presented. The decision involved no consideration of treaty rights, nor were the same discussed in the judgment in the court below. The Philippine Supreme Court, in determining the issues, held that the name "Isabela," which appellee was charged with using, was a geographical and descriptive term and incapable of registration as a trade-mark either under the Philippine Act No. 666, or the law as it existed under the Spanish regime; that the Spanish trade-name as registered consisted of the words "La Flor de la Isabela" and the trade-mark of a shield with certain devices thereon. That the action was not for the infringement of the trade-name "La Flor de la Isabela," but was for the violation of the trade-name "Isabela." And that unfair competition was not shown.

Certainly the treaty, in providing that property rights of this class should be respected, did not intend to prevent the consideration by the courts of the nature and extent of the rights granted, or prohibit the application of laws for the enforcement and regulation of such property rights when not in derogation thereof. Philippine Act No. 666, § 14, Comp. of the Acts of the Philippine Comm., § 68, itself provides that certificates issued under the Spanish sovereignty, unannulled under the royal decree of 1888, shall be conclusive evidence of the exclusive right of ownership of such trade-marks or trade-names.

Reliance is had by appellant, to sustain the jurisdiction, on the decision of this court in *Ubeda* v. *Zialcita*, 226 U. S. 452. There suit was brought upon a trade-mark registered

under the Spanish regime. The record shows that the appeal was allowed upon two grounds: (1) that the amount involved exceeded $25,000; (2) alleged violation of treaty rights in the decision that the trade-mark being itself an imitation of earlier trade-marks prevented an injunction in favor of its owner. As to the treaty claim this court said (p. 454): "In such a case [the wrongful appropriation of an earlier mark] the Philippine act denies the plaintiff's right to recover. Act No. 666, § 9. See § 12, and No. 744, § 4. Compiled Acts, §§ 63, 66. It is said that to apply the rule there laid down would be giving a retrospective effect to § 9 as against the alleged Spanish grant of December 16, 1898, to the plaintiff, contrary to the general principles of interpretation and to Article 13 of the Treaty of Paris, April 11, 1899, providing that the rights of property secured by copyrights and patents shall continue to be respected. But the treaty, if applicable, cannot be supposed to have been intended to contravene the principle of § 9, which only codifies common morality and fairness. The section is not retrospective in any sense, for it introduces no new rule."

Certainly, this was far from holding that a right of appeal existed because a right secured by the treaty was involved.

The present case was decided upon grounds entirely compatible with continued respect for the trade-mark and trade-name rights granted by the Spanish sovereignty. It results that in the sense of the statute, giving a right to review in this court, no treaty of the United States was involved in the decree which it is sought to reverse.

The appeal must be

*Dismissed.*