322 So.2d 544 (1975)
STATE of Florida ex rel. MIAMI HERALD PUBLISHING COMPANY, Etc., et al., Relators,
v.
Russell H. McINTOSH, Circuit Court Judge, Respondent.
No. 48264.
Supreme Court of Florida.
November 5, 1975.
*545 Parker D. Thomson, Susan W. Diner and Dan P.S. Paul, Paul & Thomson, Miami, for relators.
Joseph P. Metzger, Walton, Lantaff, Schroeder, Carson & Wahl, West Palm Beach, for respondent.
PER CURIAM.
This cause is before us on petition for writ of prohibition, writ of mandamus, and for other constitutional writs necessary to the complete exercise of this Court's jurisdiction. From the facts asserted in the pleadings we glean that:
Three mortgage brokers and three corporate brokerage firms are charged with "... selling unregistered securities, selling securities while not registered as a securities salesman, securities fraud, grand larceny and conspiracy to sell unregistered securities and to commit grand larceny... ." These charges are the first to emerge from the Comptroller's statewide investigation into what he terms a mammoth securities and mortgage fraud within the State. Since this investigation has been the subject of widespread coverage by state and national press, the six criminal defendants joined in a Motion to Control Prejudicial Publicity, which motion was served only on counsel for the State and for the defendants and was heard along with other pretrial motions. Upon consideration of the motion, argument of counsel, a file of press clippings and the authorities presented by the parties to the criminal action, Respondent entered his first order in which he ordered:
"1. The defendant's Motion to Control Prejudicial Publicity, in order to afford a fair trial of this cause, is hereby granted and the Court orders as follows:
"A. Members of the news media shall not report any testimony presented and/or evidence exhibited in the absence of the jury unless same shall have been admitted in evidence by the Court, or is a public record, or is presented in open court in the presence of the jury;
"B. Defense counsel, all members and employees of the Palm Beach County State Attorney's Office, all members and employees of the Attorney General's office, members and employees of the Division of Securities, and members and employees of the Office of the Comptroller, and all officials of the State of Florida, including the Comptroller and the Attorney General of the State of Florida, law enforcement officers, subpoenaed witnesses, bailiffs, clerks and other officials in attendance to this Court, shall not give or authorize any extrajudicial statement or interview relating to the trial of this cause or the parties or issues in the trial for dissemination by any means of public communication during the course of this trial, except *546 they may quote from or refer without comment to public records, or testimony or evidence that has been admitted in evidence during the course of this trial.
"2. The intendement [Sic] of this Order is to prevent publicity of a nature that would tend to adversely affect the rights of the defendants to a fair trial."
On his morning arrival at the courtroom Relator Schwartz, a reporter for Relator newspaper, was instructed to pick up a copy of this order, which he did. That afternoon, Realtors sought revocation of Respondent's first order; a hearing was scheduled for the following morning. At that hearing, Relators filed a Motion to Vacate Respondent's first order, supporting their Motion with a memorandum of law. No additional factual support for the first order was submitted. At the conclusion of the hearing, Respondent entered his second order in which he not only denied Relators' Motion on the ground that they had no standing to challenge the first order but he also made the following gratuitous "findings of fact":
"That there has been a considerable amount of publicity by news media throughout the State, some of which quotes high government officials on the subject matter of this prosecution;
"That it is reasonable to expect that this publicity will continue during the course of this trial; and
"That the continuance of this publicity if it is permitted to include proferred testimony and/or documents or other physical evidence which are inadmissible against the defendants or opinions of public officials, attorneys, court personnel, and other restrained by the contested order constitutes a `clear and present danger' that the defendants in this prosecution will not receive a fair trial unless the order entered herein be enforced."
Immediately, on October 15, 1975, after the denial of their Motion, Relators sought expedited review in the District Court of Appeal, Fourth District, by filing a Suggestion for Writ of Prohibition, which Suggestion was denied Per Curiam, with a dissenting opinion on October 17, 1975. Jury selection began October 14, 1975, and concluded on Friday, October 17, 1975. The taking of testimony commenced on Monday, October 20, 1975. Thereafter, on October 28th, some eleven days after the decision of the District Court, Petitioners filed for relief in this Court, seeking, among other things, a Stay Order suspending operation of the trial judge's orders. An emergency hearing was set and oral argument heard on Monday, November 3, 1975. After careful review of the record, we make the following determinations.
Since the District Court of Appeal, Fourth District, has rendered its decision on the same matters presented to this Court, we deem it inappropriate to entertain the Petition for Prohibition, and Mandamus is not available as a remedy in this case. See State ex rel. Dykeman v. Petteway, 96 Fla. 74, 117 So. 696 (1928) and its progeny. Relief, therefore, is denied.
Section 2(a), Article V, Constitution of Florida, provides, among other things, that "no cause shall be dismissed because an improper remedy has been sought." Pursuant to that authority, the Court has elected to treat the Petition filed in this cause as a Petition for Conflict Certiorari, recognizing therein an apparent conflict between the decisions of the District Courts because of the decision in the instant case and the case of State ex rel. Miami Herald Publishing Co. v. Rose, 271 So.2d 483 (Fla.App. 2, 1972). Noting that the two decisions may be in conflict, the Court deems there to be colorable jurisdiction for the purpose of making a determination at an appropriate time on the question of jurisdiction, and, if the Court determines that it has conflict jurisdiction, to render a decision on the merits under rules relating to Conflict Certiorari.
*547 We realize that this temporary delay will be little comfort to the Relators as to the trial now pending, but believe all parties understand that this is an important issue both as to how the Stay Order might affect the present trial in progress and future criminal trials of public interest and that, therefore, this Court should not rule in a summary manner without full briefing and the record in this cause. Because of the importance of the question of law involved, we expect that this cause will proceed to final determination even after disposition of the pending criminal trial. Furthermore, we observe that Relators initially chose as their forum the Fourth District Court of Appeal, rather than this Court, within which to seek prohibition of the enforcement of the orders involved and that the matter arrives here when the criminal trial is in its third week. We have received a brief on the merits from only one side in this cause. Naturally, we deem it inappropriate to discuss the merits of this controversy without the benefit of argument or briefs by both sides.
Accordingly, it is the opinion of the Court and we hold:
1. That the Petition for Prohibition, Mandamus and Stay Order is denied.
2. Pursuant to Section 2(a), Article V, Constitution of Florida, the Court has classified the Petition as a Petition for Conflict Certiorari governed by Section 3(b)(3), Article V, Constitution of Florida, and rules relating to Conflict Certiorari. Relief requested for any other constitutional relief is denied.
3. Petitioners shall file their briefs on jurisdiction and merits on or before noon, Monday, November 10th, and Respondent is directed to file brief on jurisdiction and merits on or before Friday, November 14th, with oral argument, thirty minutes to the side, to be heard on jurisdiction and merits on November 17th. Parties shall file such supplements to the record as they deem appropriate with their respective briefs.
It is so ordered.
ADKINS, C.J., and ROBERTS, OVERTON, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice (concurring in part and dissenting in part).
I concur in that part of the majority opinion which permits Relators to proceed in this Court on conflict certiorari, but I dissent from that portion of the opinion which denies the petition to stay the orders of the trial court limiting Relators' right to report that which occurs in open court, even though the jury may not be present.
I would deny Respondent's Motion to Quash or Dismiss the Relators' petition, inasmuch as any form of prior restraint of expression comes to a reviewing court bearing a heavy presumption against its constitutional validity; the party who seeks to have such a restraint upheld carries a heavy burden of showing justification for the imposition of such a restraint (New York Times Company v. U.S. and U.S. v. The Washington Post Company, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822; Bantam Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)). In my view, Respondent has not carried that burden. Due to the nature of this proceeding while a highly publicized criminal court trial is in progress, I do not think that this Court should delay its decision for the period required under conflict certiorari jurisdiction. I believe that under the all writs provision of the Florida Constitution an appropriate order should be issued now to require that any order restricting news coverage in that trial meet *548 standards set by the United States Supreme Court in cases cited herein.
In my view the two orders of the trial court presently being considered are substantially similar to the order reviewed in Times-Picayune Publishing Corp. v. Schulingkamp, 419 U.S. 1301, 95 S.Ct. 1, 42 L.Ed.2d 17. In that case the order imposed a total ban on reporting of testimony given in hearings on pretrial motions until after selection of a jury and placed other selective restrictions on reporting before and during the trial, including prohibitions against publishing interviews with subpoenaed witnesses, the defendants' criminal records or confessions unless allowed in evidence, and editorial comments tending to influence the court, jury or witnesses. A review of the first order entered below shows remarkable similiarity. In Schulingkamp Justice Powell granted an application by a newspaper owner for a stay, pending review on certiorari, of the state court order; in my view I feel this same action should be taken in this case.
I recognize that a court is legitimately concerned with preventing prejudicial publicity from poisoning the impartial atmosphere essential to a fair trial. Nevertheless, the court's action in restricting the media must relate to the danger sought to be avoided and it must not be unconstitutionally overbroad (U.S. v. C.B.S. Inc., 497 F.2d 102 (5th Circuit 1974)). In C.B.S. Inc. v. Young, 522 F.2d 234 (6th Circuit, Opinion filed July 2, 1975) the court held that prior direct restraints must pose a "clear and present danger" or a "serious or imminent" threat to a protected interest and that restraint cannot be upheld if reasonable alternatives are available. In Chicago Council of Lawyers v. Bauer, 522 F.2d 242 (7th Circuit, Opinion filed August 4, 1975) the court held that the proscribed comments must pose a "serious and imminent threat" of interference with fair administration of justice. In U.S. v. Dickinson, 465 F.2d 496 (5th Circuit 1972) the court observed that before First Amendment freedoms can be abridged, substantive evil must be extremely serious and the degree of imminence extremely high. The standard to be met is that the expression by the press must constitute "an immediate, not merely likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil." (See Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); see, also, U.S. v. C.B.S. Inc., supra.)
It has been recognized that the news media, even though not a party to litigation below, has standing to question the validity of an order because its ability to gather news is directly impaired or curtailed (see C.B.S. Inc. v. Young, supra, and State ex rel. Gore Newspaper Company v. Tyson, 313 So.2d 777 (Fla.App. 1975)). This is so, because the public and press have a right to know what goes on in a courtroom whether the proceeding be criminal or civil. A member of the press or newspaper corporation may be properly considered as a representative of the public insofar as enforcement of public right of access to the court is concerned. Public and press have a fundamental right of access to all judicial proceedings. In determining restrictions to be placed upon access to judicial proceedings, the court must balance the rights and interests of the parties to litigation with those of the public and press (State ex rel. Gore Newspaper Company v. Tyson, supra). Reporters are plainly free to report whatever occurs in open court through their respective media (Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, reh. den., 382 U.S. 875, 15 L.Ed.2d 118, 86 S.Ct. 18; Pennekamp v. Florida, 328 U.S. 331, 90 L.Ed. 1295, 66 S.Ct. 1029 (1946)).
I recognize that a trial court has the inherent power to control the conduct of the proceeding before it (State ex rel. Gore Newspaper Company v. Tyson, supra). I further recognize that it is the trial court's responsibility to protect a defendant in a *549 criminal prosecution from inherently prejudicial influences which threaten fairness of his trial and the abrogation of his constitutional rights (see Dickinson, supra). However, I feel that, through admonition to jurors and through sequestration of the jury, a trial judge has ample power to insure a fair trial for a criminal defendant without suppressing First Amendment rights of the news media as regards reporting proceedings (Rose, supra). Trial is a public event, there is no special perquisite of the judiciary which enables it to suppress, edit or censor events which transpire in proceedings before it, and those who see and hear what transpired may report it with immunity (Dickinson, supra).
It is my opinion that the first order presently under consideration is unconstitutionally vague on the matter of the extent of news suppression, that the court failed to give notice to the news media who are the parties affected thereby and that the first order is overbroad in that it enjoins the reporting of opinions of public officials, attorneys, and court personnel. Gagging a public official who has pertinent information is as detrimental to the First Amendment as drying up the reporter's pen. As stated in C.B.S. Inc. v. Young, supra, the protected right to publish news would be of little value in the absence of sources from which to obtain it.
In its first order the court states its purpose to be "to prevent publicity ... that would tend to adversely affect the rights of the defendants to a fair trial;" however, its second order states that continued publicity would constitute a "clear and present danger" that the defendants will not receive a fair trial. The court does not explain this latter finding, and evidence thereof is not present in the record before us now.
Therefore, under the all necessary writs provision of the Florida Constitution we should quash both trial court orders subject to the right of the trial court to issue further appropriate orders in accordance with the above-mentioned federal standards. Such orders should be entered only after statement in open court announcing time for a hearing on matters with the right of interested news media to be heard on the law and the facts. Any such order which might be entered should contain a clear statement of facts demonstrating the basis of any finding that there exists clear and imminent danger to the rights of the criminal defendants to a fair trial.
It is clear that censorship in any form, including judicial censorship, is incompatible with dictates of the Constitution and the concept of free press (Dickinson, supra). State judges have the same obligation as those in the federal system to follow constitutional interpretations enunciated by the Supreme Court of the United States. In the views expressed here relating to free press and fair trial I have sought to accomplish that purpose. If, indeed, the Relators have a right to publish the restricted information, failure of this Court to give timely relief will effectively deny Relators the opportunity to publish certain matters pertaining to this trial.