## STATE v. RINEHART
No. 78-2976
Circuit Court, Pinellas County, Criminal Division
November 17, 1978

James T. Russell, State Attorney, for the state.

Ellen Hoffenberg, Clearwater, for the defendant.

George K. Rahdert, St. Petersburg, for the intervenors.

JAMES B. SANDERLIN, Circuit Judge.

*Memorandum opinion and order unsealing court records:* This cause came to be heard on November 6, 1978 upon the motion of the Times Publishing Company and Nancy Kalwary for limited intervention and for rehearing of the court's prior order sealing court records. The intervenors, who are members of the press, did not have notice and did not participate in the court's initial consideration of motions to seal the court records. The standing of the press to challenge such orders is unchallenged. *State v. McIntosh*, 340 So.2d 904 (Fla. 1977) ; *Times Publishing Co. v. Hall*, 357 So.2d 736, 3 Med.L.Rptr. 1977 (Fla. 2d DCA 1978).

By order dated November 13, 1978, the court ruled that the special closure rules of Chapter 39, Florida Statutes (1977), do not obtain in this action, because the defendant in this cause, a sixteen-year-old youth, is to be tried as an adult subject to the operation of Section 39.02(5)(c), Florida Statutes (1977), which divests the juvenile court of jurisdiction over the defendant. See *EHN v. Willis*, 357 So. 2d 821, 831, (Fla. 1st DCA 1977). Accordingly, fair trial/ free press issues are not affected by statutory closure provisions, but rather are to be determined by analysis of competing constitutional interests, as developed in the case law.

Pursuant to this court's order of November 13, 1978, the defendant has presented a list of twelve documents and classes of documents contained in the court file in this matter, which defendant requests to remain sealed. Included are depositions, witness lists, subpoenas, a motion to pay costs, and this court's previous "order to secure records from public inspection," and various other court records. As more fully discussed below, it is this court's opinion that all such documents are part of the public record in this matter, and are available to the press and public under considerations of freedom of the press founded on the First Amendment to the United States Constitution and Article I, Section 4 of the Florida Constitution, and Sixth Amendment considerations of the right to a public trial subject to competing Sixth Amendment interests in the right to a fair trial. It is the balancing of these constitutional principles which is the subject of this opinion and order.

I

The First Amendment interest in open judicial proceedings and public scrutiny of the judicial branch of government is fundamental. The Florida Supreme Court has noted that "a member of the press or newspaper corporation may be properly considered as a representative of the public insofar as enforcement of public right of access to the court is concerned; *and the public and press have a fundamental right of access to all judicial proceedings.*" *State v. McIntosh,* supra, at page 908 (emphasis supplied) ; *Miami Herald Publishing v. Collazo,* 329 So.2d 333, 336 (Fla. 3rd DCA 1976). This fundamental interest will yield only upon the showing of "compelling reasons" for closure of court records. *News-Press Publishing Company, Inc. v. State,* 45 So.2d 865, 867 (Fla. 2d DCA 1977).

The nature of the First Amendment interest may be understood in terms of the practicalities of news reporting. Simply stated, the First Amendment would be a meaningless liberty unless the press is free to both gather the news and publish information concerning matters of public interest. Accordingly, "it is fundamental that newsgathering qualifies for First Amendment protection, for a ban upon newsgathering could effectively destroy freedom of the press." *In re Adoption of Proposed Local Rule 17,* 339 So.2d 181, 183 (Fla. 1976). Restrictions placed on the newsgathering process thus bear a close functional similarity to prior restraint on publication itself. Either form of restriction delays the availability of information to the press and public. The Florida Supreme Court has expressed concern for such delays in the news —

"We firmly reject any supression of news in a criminal trial . . . News delayed is news denied. To be useful to the public, news events must be recorded when they occur. Whatever

happens in any courtroom directly or indirectly affects all the public. To prevent star-chamber injustice, the public should generally have unrestricted access to all proceedings." [*State v. McIntosh*, supra, 340 So.2d at 910]

In view of the close analogy between prior restraint on publication and restraints on newsgathering, the court finds instructive the recent and exhaustive U.S. Supreme Court decision in *Nebraska Press Association v. Stewart*, 427 U.S. 539 (1976). That case involved a prior restraint placed on publication of news concerning a notorious criminal trial in a small Nebraska town. The Supreme Court noted the preferred position of First Amendment interests in open judicial proceedings, and ruled that the proponent of restraints on publications ". . . carries a heavy burden of showing justification for the imposition of such a restraint."

Moreover, the responsibility for maintaining and preserving trial fairness under the Sixth Amendment is not to be imposed upon the press, but rather it is a trial court's duty to protect the defendant's constitutional right to a fair trial. *Id.* at 427 U.S. 552; see *Sheppard v. Maxwell*, 384 U.S. 333 (1966). In this regard it is the trial court's responsibility to explore less restrictive alternatives including —

"(a) Change of trial venue to a place less exposed to the intense publicity that seemed imminent in Lincoln County; (b) postponement of the trial to allow public attention to subside; (c) use of searching questions of prospective jurors, as Chief Justice Marshall did in the Burr case, to screen out those of fixed opinions as to the guilt or innocence; (d) the use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court. Sequestration of jurors is, of course, always available." [427 U.S. 563-64]

The preference for less restrictive means of avoiding prejudice is treated extensively in *Sheppard v. Maxwell*, supra, and is likewise recognized by the Florida Supreme Court in *State v. McIntosh*, supra.

The U.S. Supreme Court further noted that even if less restrictive alternatives do not appear to be workable, restraints on publications cannot be justified where they will not be effective —

"We must also assess the probable efficacy of restraint on publication as a workable method of protecting [the defendant's] right to a fair trial, and we cannot ignore the reality of the problems of managing and enforcing pre-trial restraining orders." [427 U.S. at 565]

## I I

It is to be noted that the Sixth Amendment requires that criminal prosecutions be conducted by public trial. This right does not reside solely in the defendant subject to his waiver, but rather expresses a constitutional revulsion of star-chamber proceedings and a public interest in public trial. *Craig v. Harney,* 331 U.S. 367 (1947); *In Re Oliver,* 333 U.S. 257 (1948).

## I I I

Counsel for both the intervenors and the defendant agree on the constitutional standard which applies in weighing competing constitutional claims: closure orders are acceptable only to prevent a clear and present danger to the defendant's right to a fair trial. The disagreement comes in applying this standard to the present case.

The applicable law is well-summarized by the Florida Supreme Court in *State v. McIntosh,* supra, 40 So.2d at 908 —

"While a court is legitimately concerned with preventing prejudicial publicity from poisoning the impartial atmosphere essential to a fair trial, the court's action in restricting the media must relate to the danger sought to be avoided and it must not be unconstitutionally overbroad. For instance, in *CBS, Inc. v. Young,* [522 Fed. 2d 234 (6th Cir. 1975)] the court held that to justify imposition of a prior restraint the activity restrained must pose a clear and present danger or a serious or an imminent threat to a protected competing interest and that such a restraint cannot be upheld if reasonable alternatives are available. In *U.S. v. Dickinson,* [465 Fed. 2d 496 (5th Cir. 1972)] the court observed that before First Amendment freedoms can be abridged, a substantive evil must be extremely serious and the degree of imminence extremely high. The standard to be met is that the expression by the press must constitute an immediate, not merely likely, threat to the administration of justice. The danger must not be remote or even probable. It must immediately imperil." [Footnotes omitted]

Earlier this year, the American Bar Association articulated a similar standard for the exclusion of the public from pre-trial proceedings and the sealing of pre-trial records: —

"The presiding officer may close a preliminary hearing, bail hearing, or other pre-trial proceedings, including a motion to suppress, and may seal the record only if:

(i) The dissemination of information from the pretrial proceeding and its record would create a clear and present danger to the fairness of the trial, and

(ii) the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means."

Standard 8-3.2, *American Bar Association Standards Relating to the Administration of Criminal Justice: Fair Trial and Free Press* (1978).

For other authorities applying this or a similar standard, see, e.g., *Chicago Counsel of Lawyers v. Bauer*, 522 Fed. 2d 242 (7th Cir. 1975); *Miami Herald Publishing Co. v. State*, (Fla. 4th DCA 1978) [No. 77-2530, Oct. 25, 1978]. See also *Times Publishing Co. v. Hall*, supra.

## I V

In summary of the principles of law recited above, it is the court's conclusion that the defendant in this case must sustain a three-part burden of demonstrating the validity of the closure order at issue here —

1. The defendant must show that prejudicial publicity will create a clear and present danger to the defendant's Sixth Amendment right to a fair trial;

2. The defendant must demonstrate the unavailability of trial management alternatives which will avoid jury prejudice by means less chilling of First Amendment interests; and

3. The defendant must show that closure will be effective in achieving trial fairness.

It is the court's opinion that the defendant has not met this heavy burden.

With respect to the determination of a clear and present danger, the relevant consideration is whether publicity will be so prejudicial that a jury of twelve unbiased individuals cannot be selected. The constitutional standard in this regard is that the defendant is entitled to a panel of "indifferent jurors," however "qualified jurors need not . . . be totally ignorant of the facts and issues involved." *Hoy v. State*, 353 So. 2d 826, 828 (Fla. 1978), citing *Murphy v. Florida*, 421 U.S. 794 (1975).

In applying the clear and present danger standard, it is the court's duty "to make its own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance

and then to balance the character of the evil, as its likelihood, against the need for free and unfettered expression." *Landmark Communications v. Virginia*, 46 U.S.L.W. 4389 (May 1, 1978). It is relevant in this regard to note the observation of the United States Supreme Court in *Nebraska Press Association v. Stewart* to the effect that cases are "relatively rare" where publicity is so prejudicial and pervasive that a fair trial is denied.

The court has heard extensive argument of counsel on this point, and has reviewed the record in this case. It is this court's opinion that the defendant has failed to meet his burden of demonstrating a clear and present danger to his right to a fair trial, for reasons more fully expressed by the court in the transcript of the November 13, 1978 hearing on this matter.

The court is equally unconvinced that effective alternatives to a closure order do not exist. For example, the number of preemptory challenges may be increased, *State v. Hoy*, supra, *Dobbert v. State*, 328 So.2d 433 (Fla. 1976), or venue may be changed to a distant county. See *Nebraska Press Association v. Stewart*, supra, 427 U.S. at 563 n.7 (indicating that statutory restrictions on changes of venue must on occasion yield to constitutional requirements).

Finally, in view of the significant publicity about this case which includes information contained in the court files, the court is not convinced that a closure order will be efficacious in significantly reducing prejudicial publicity.

## V

Defense counsel argues that the liberal criminal discovery rule, Rule 3.220, Florida Rules of Civil Procedure, contemplates the withholding of evidentiary records, depositions, witness lists and the like from public inspection. It is further argued that Section 28.14, Florida Statutes (1977), excludes discovery materials from the definition of court records.

The court cannot recognize procedural rules or statutory provisions as a ground for excluding the press and the public and denying fundamental First Amendment and Sixth Amendment interests.

Moreover, it is specifically established by controlling precedent that depositions are court records subject to the compelling First Amendment interest in their availability to the press and public. *News-Press v. State* 340 So.2d 865, 867 (Fla. 2d DCA 1977). As a general matter, depositions are evidentiary in nature, and are often introduced at trial, they are obtained in most cases by compulsory process issued by the state, they contain sworn testimony

before an official court reporter who is commissioned by the state, often the depositions are taken in the courthouse itself, and they are often signed by the deponent. Accordingly, it is the court's judgment that depositions are court records in which First Amendment and Sixth Amendment interests in openness adhere. The same can be said of other court documents contained in the record.

It is order and adjudged that as of this date the entire record in this case shall be open for public inspection.