471 So.2d 571 (1985)
PALM BEACH NEWSPAPERS, INC., and Miami Herald Publishing Company, et al., Petitioners,
v.
The Honorable Richard Bryan BURK, Linda Aurilio and State of Florida, Respondents.
No. 83-422.
District Court of Appeal of Florida, Fourth District.
June 11, 1985.
*572 Talbot D'Alemberte and L. Martin Reeder, Jr., of Steel, Hector, Davis, Burns & Middleton, Palm Beach, for petitioner/Palm Beach Newspapers, Inc.
Richard J. Ovelmen, Miami, for petitioner/Miami Herald Pub. Co.
Jim Smith, Atty. Gen., Tallahassee, and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for respondent/Richard Bryan Burk.
*573 Richard L. Jorandby, Public Defender, and Margaret Good, Asst. Public Defender, West Palm Beach, for respondent/Linda Aurilio.

UPON PETITION FOR REVIEW EN BANC
Palm Beach Newspapers, joined by other newspapers (all referred to as the Press), are here under the provisions of Florida Rule of Appellate Procedure 9.100.
There was pending an attempted murder case in West Palm Beach entitled State of Florida v. Linda J. Aurilio, Case No. 82-5858-CF-T. Being interested, the Press sought access, as hereinafter particularized, to pretrial discovery depositions in this criminal case. The effort was unsuccessful. The respondent trial judge basically ruled that such depositions are not judicial proceedings, and that such depositions are not court records until such time as they are transcribed and filed with the Clerk. The Press, being thereby disaccommodated, filed this proceeding.
The questions to be resolved, as we understand them, are (1) Is the Press entitled to notice and an opportunity to attend pretrial discovery depositions in a criminal case? and (2) Is the Press entitled to access to pretrial discovery depositions taken but not filed with the Clerk?[1]
Upon consideration of the excellent advice of counsel, we answer the questions in the negative. We approve and affirm the order under review.
To more exactly reflect the position and demands of the Press, we quote from the Press' Petition:
Respondent's ruling that the petitioner may not attend depositions in this case should be reversed and the case should be remanded to determine whether closure of any particular deposition is appropriate under the three-part test of Lewis. The trial court must consider the facts which relate to a particular deposition before ordering that particular deposition closed.
This Court also should direct the trial court to require the release or filing of any existing deposition transcripts and any deposition transcripts ordered in the future by the parties or the petitioner unless a motion to seal the transcripts is filed, and evidence produced at a hearing shows a compelling need to seal.
Finally, the lower court should be directed to require the filing of all original notices of taking depositions in accordance with the rules of civil and criminal procedure. If a party believes that public or press access to any future depositions will infringe on the fair trial rights of the accused or will unreasonably endanger the defendant or a witness or any other person, that party should file an appropriate motion seeking to restrict access and notice the media of the hearing thereon. At the hearing, the movant must be required to present evidence sufficient to overcome his burden of meeting each prong of the three-part test established in Miami Herald v. Lewis [426 So.2d 1 (Fla. 1982)] and Miami Herald v. State [363 So.2d 603 (Fla.App. 1978)].
The Press tells us that, "No Florida appellate court has addressed directly the issue here presented: whether depositions taken in the course of a criminal proceedings are pretrial judicial proceedings to which the right of access applies." We are then referred to a number of cases that, according to the Press, support their position by inference, deduction, or otherwise. Having reviewed such cases, we are not persuaded and see no gain to be accomplished by engaging in a disputation on a *574 case by case basis. Perhaps the largest distinction to be found is that many of the cited cases deal with access to trial or proceedings actually conducted before the court (judge) in the courthouse while here the judge is not present at the taking of the depositions, which events may take place outside the courthouse. We found not a single case, statute or rule that we think precedentially commands the result contended for by the Press.[2] The survey, though educational, did indeed reveal the success of the press generally in gaining access to proceedings theretofore thought private or subject to court discretion.
We support our decision that the Press has no constitutional right to access to pretrial depositions in a criminal case, as defined in the questions before us, by referring to the following cases:

GANNETT CO., INC. v. DePASQUALE

443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979)

While this case is not on point in that it deals primarily with press access to a pretrial hearing (before the judge in court) on a motion to suppress allegedly involuntary confessions and physical evidence in a criminal case, we think portions of the concurring opinion of Chief Justice Burger are illuminating:
Even though the draftsmen of the Constitution could not anticipate the 20th-century pretrial proceedings to suppress evidence, pretrial proceedings were not wholly unknown in that day. Written interrogatories were used pretrial in 18th-century litigation, especially in admiralty cases. Thus, it is safe to assume that those lawyers who drafted the Sixth Amendment were not unaware that some testimony was likely to be recorded before trials took place. Yet, no one ever suggested that there was any "right" of the public to be present at such pretrial proceedings as were available in that time; until the trial it could not be known whether and to what extent the pretrial evidence would be offered or received. Similarly, during the last 40 years in which the pretrial processes have been enormously expanded, it has never occurred to anyone, so far as I am aware, that a pretrial deposition or pretrial interrogatories were other than wholly private to the litigants. A pretrial deposition does not become part of a "trial" until and unless the contents of the deposition are offered in evidence. Pretrial depositions are not uncommon to take the testimony of a witness, either for the defense or for the prosecution. In the entire pretrial period, there is no certainty that a trial will take place. Something in the neighborhood of 85 percent of all criminal charges are resolved by guilty pleas, frequently after pretrial depositions have been taken or motions to suppress evidence have been ruled upon. For me, the essence of all of this is that by definition "pretrial proceedings" are exactly that.
Gannett, 443 U.S. at 396, 99 S.Ct. at 2914, 61 L.Ed.2d at 631.

TALLAHASSEE DEMOCRAT, INC. v. WILLIS

370 So.2d 867 (Fla. 1st DCA 1979)
This case deals with Press access to written depositions filed with the Clerk. It held, among other things, "In sum, we conclude that the rules of procedure contemplate that upon filing, unless otherwise ordered by the court, a deposition becomes a part of the `court file' (Rule 1.400, Florida Rule of Civil Procedure). According to this view, in the absence of a court order sealing the deposition, or some provision of law requiring the same to remain confidential, *575 the Press may not be excluded from reading, copying and reporting the contents of a deposition." Tallahassee, 370 So.2d 870-871. We agree with this holding. See also Ocala Star Banner Corp. v. Sturgis, 388 So.2d 1367 (Fla. 5th DCA 1980). We note that the trigger device is the act of "filing." Thus, conversely, we hold that no right of access accrues until there is a "filing." As all know, our rules of procedure do not blanket mandate the filing of depositions and other discovery documents. See Fla.R.Civ.P. 1.310(f) 3, 1.340, and 1.350. Moreover, Florida Rule of Judicial Administration 2.075(a)(1) defines court records as "the contents of the court file, depositions filed with the clerk... ." Thus, non-filed depositions are not court records available to the Press. Also, we know of no requirement for counsel to require transcription and to file a discovery deposition or statement when, for example, it was non-productive, hurtful to his cause, or where it will be of no use to him at trial.
Finally, we note with approval this statement and footnote because it partially capsulates a basis for our holding:
Petitioners argue with great insistence the applicability of the notice and hearing procedures set forth in State ex. rel. Miami Herald Publishing Co. v. McIntosh [340 So.2d 904 (Fla. 1977)], supra. However, we perceive a distinction between press rights of access to court hearings or trials, and access to portions of the court file or records which may or may not be subject to public and press inspection, i.e., specifically, depositions.[4]
[4] We agree with respondent's observation (response by letter dated April 16, 1979) that depositions are "tools of discovery and preserving evidence", but we would add further qualifications and observations. A deposition does not become evidence in a case unless and until admitted by ruling of the court at a trial or hearing; that depositions very often contain matters that are not and can never be considered as evidence, since the scope of inquiry on depositions is not limited as in examination of a witness in a judicial proceeding; that persons not even parties to the case are often compelled under process of law to divulge information that is not intended for use as evidence, but merely to elicit or lead to information that might explain other evidence or become admissible as evidence; and the taking of a deposition itself can hardly be categorized as a "judicial proceeding" for the simple reason that there is no judge present and no rulings nor adjudications of any sort are made by any judicial authority. Further, in criminal cases, discovery depositions taken under Rule 3.220(d), Fla.R.Cr.P. may be used only "for the purpose of contradicting or impeaching testimony of the deponent as a witness"; and deposition testimony may be used as evidence at the trial only if taken to perpetuate testimony under Rule 3.190(j) requiring a court order, notice to defendant, and, if defendant is in custody, his presence at the deposition, and a showing that attendance of the witness cannot be procurred at the trial. State v. Basiliere, 353 So.2d 820 (Fla. 1978).
Tallahassee, 370 So.2d at 871-72.

UNITED STATES v. GURNEY

558 F.2d 1202 (5th Cir.1977), rehearing denied 562 F.2d 1257 (5th Cir.1977), cert. denied, 435 U.S. 968, 98 S.Ct.

1606, 56 L.Ed.2d 59 (1978)
This was a criminal case, courthouse trial, which is a step closer than our case where the trial has yet to commence and where the proceedings were not conducted at the courthouse. In Gurney, the trial judge denied the Press access at trial to (1) the exhibits proferred but not yet admitted into evidence; (2) transcripts of bench conferences held in camera where exhibits and testimony were proffered; (3) written communication between the jury and judge; and (4) Gurney's grand jury testimony which had not been read to the jury. It also appears that the trial court failed to conduct a hearing on Press requests but merely entered oral orders denying access, which orders were subsequently confirmed in writing with reasons. These rulings and actions were affirmed by the United States Court of Appeals, Fifth Circuit, and certiorari was denied by the Supreme Court.

SEATTLE TIMES CO. v. RHINEHART

___ U.S. ___, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)

While this is a civil case which approved limitation upon use of pretrial discovery, we think some of its pronouncements are inferentially significant:

*576 As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes. As the rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. Zemel v. Rusk, 381 U.S. 1, 16-17, 85 S.Ct. 1271, 1280-1281, 14 L.Ed.2d 179 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information.") Thus, continued court control over, the discovered information does not raise the same spectre of government censorship that such control might suggest in other situations. See In re Halkin, 598 F.2d, at 206-207 (Wilkey, J. dissenting).
Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, Gannett Co. v. DePasquale, 443 U.S. 368, 389, 99 S.Ct. 2898, 2910, 61 L.Ed.2d 608 (1979), and, in general, they are conducted in private as a matter of modern practice. See id., at 396, 99 S.Ct., at 2913-2914 (BURGER, C.J., concurring); Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L.Rev. 1 (1983). Much of the information that surfaces during pre-trial discovery may be unrelated or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.
Finally, it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. See Gannett Co. v. DePasquale, 443 U.S., at 399, 99 S.Ct., at 2915 (POWELL, J. concurring). As in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes. In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.
Seattle Times Co., 104 S.Ct. at 2207-2208 (footnotes omitted).
* * * * * *
... Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.
There is an opportunity, therefore, for litigants to obtain  incidentally or purposefully  information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. Cf. Herbert v. Lando, 441 U.S. 153, 176-177, 99 S.Ct. 1635, 1648-1649, 60 L.Ed.2d 115 (1979); Gumbel v. Pitkin, 124 U.S. 131, 145-146, 8 S.Ct. 379, 384-385, 31 L.Ed. 374 (1888). As stated by Judge Friendly in International Products Co. v. Koons, 325 F.2d 403, 407-408 (CA2 1963), "[w]hether or not the Rule itself authorizes [a particular *577 protective order] ... we have no question as to the court's jurisdiction to do this under the inherent `equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.'" (citing Gumbel v. Pitkin, supra). The prevention of the abuse that can attend the coerced production of information under a state's discovery rule is sufficient justification for the authorization of protective orders.
Seattle Times Co., 104 S.Ct. at 2208-2209 (footnotes omitted).
FORT MYERS BROADCASTING COMPANY v. NELSON
460 So.2d 420 (Fla. 2d DCA 1984)
We deny the petition for a writ of certiorari from the trial court's order closing to the public all discovery depositions in this libel lawsuit. See Seattle Times Co. v. Rhinehart, ___ U.S. ___, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); Fla.R.Civ.P. 1.280(c).
We shortly address the term, "pretrial discovery depositions." The word pretrial needs no elaboration. Discovery is partially defined in Black's Law Dictionary, Revised Fourth Edition, "In a general sense, the ascertainment of that which was previously unknown; the disclosure or coming to light of what was previously hidden." Discovery in criminal cases is provided in Florida Rule of Criminal Procedure 3.220 and discovery depositions are specifically provided in Florida Rule of Criminal Procedure 3.220(d) where it is said,
At any time after the filing of the indictment or information the defendant may take the deposition upon oral examination of any person who may have information relevant to the offense charged. The deposition shall be taken in a building where the trial may be held, such other place agreed upon by the parties or where the trial court may designate by special or general order.
It is further provided, "Any deposition taken pursuant hereto may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness." Finally, the matter of notice and subpoenas is treated. Florida Rule of Criminal Procedure 3.220(a) discusses in detail the prosecutor's many obligations with reference to discovery. We think it is significant that these important functions shall, according to Florida Rule of Criminal Procedure 3.220(a)(3), be performed in any manner mutually agreeable to the prosecutor and defense counsel or as ordered by the court. In other words, court supervision of the discovery process is not required so long as counsel can agree. Finally, the term "deposition" means the testimony of a witness given in advance of the trial upon oral examination or written questions where there is an opportunity for cross-examination. See generally 19 Fla.Jur.2d Discovery and Depositions § 59.
The Press urges that it should have access to pretrial discovery depositions as here contended unless someone moves for a protective order and successfully meets the three-pronged test promulgated in Miami Herald Pub. Co. v. State, 363 So.2d 603 (Fla. 4th DCA 1978) and adopted by the Florida Supreme Court in Miami Herald Pub. Co. v. Lewis, 426 So.2d 1 (Fla. 1982). The test is that movants seeking closure or protection must establish:
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No alternatives are available other than a change of venue, which would protect a defendant's right to a fair trial; and
3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
In Miami Herald Pub. Co. v. Lewis, closure was sought as to a hearing on a motion to suppress the defendants' confessions in a homicide case. Different from the instant case, the suppression hearing was to be conducted before the judge in court. Moreover, different from the matter of pretrial discovery, the dimension of *578 the problem in Miami Herald Pub. Co. v. Lewis, was quite apparent. There had been extensive pretrial media coverage of the murder of a four-year-old child and the public, thanks to the media, was aware that the defendant had confessed. So the important but simple question there projected was: Should the media have the right to attend the suppression hearing and to publish its happenings and the content of the confession?
We hold that the three-pronged test is not applicable to pretrial discovery proceedings such as discovery depositions because, among other things, the taking of such depositions is not a judicial proceeding since the judge is not in attendance and since the deposition cannot be received in evidence. More importantly, if such test were to be considered as applicable, it would be impossible to apply because of the inherent nature of such depositions. Counsel cannot know in advance what testimony will be adduced at discovery depositions.
Usually and for obvious reasons such discovery depositions are aimed at hostile witnesses, witnesses that refuse to communicate or give statements and witnesses that refuse to cooperate with counsel or his investigator seeking information. The reasons why counsel may seek to depose a witness in a criminal case defy being catalogued. Perhaps based on hunch or hearsay it is thought that the witness may have some knowledge of some kind about some facet of the alleged crime. The witness upon being deposed may reveal that he or she was an eye-witness or a participant or that the witness knows nothing. It may uncover incriminating or exculpatory information of large or small magnitude about all or some of the events. Again, the point is that counsel cannot know in advance, except by way of possible speculation and conjecture, what the witness knows and the scope of the testimony. Under these circumstances counsel cannot apply in advance for protection and, if he did do so, he would have no way of satisfying the three-pronged test. Repetitively, how can he protect his client's right to a fair trial when he does not know if the witness's unrevealed and undiscovered testimony, if released to the media, would prejudice and place the defendant in jeopardy?
All who have taken discovery depositions know that it entails fishing on a dangerous and uncharted sea. However, they are very valuable tools and, in our opinion, a lawyer would be remiss in not making pretrial inquiry of witnesses where he has reason to think they may have knowledge of some kind concerning the alleged crime. If the witness incriminates the defendant when the indicated areas are plumbed, counsel will at least know what he may be faced with at trial and undertake to mount a defense. Counsel can undertake to elicit impeachment testimony and other matters that might impair the credibility of the witness. If the witness has friendly testimony then, of course, counsel will add the witness to his trial witness list.
Practical considerations militate against press access, although it is agreed that such considerations could not prevail if access was constitutionally mandated. As before mentioned, discovery depositions are not subject to admission into evidence. Jackson v. State, 453 So.2d 456 (Fla. 4th DCA 1984) Terrell v. State, 407 So.2d 1039 (Fla. 1st DCA 1981).[3] Moreover, as a general rule, there are many questions and answers that are proper as a matter of discovery which would not be allowable even if produced live at trial. Thus, if the Press is present at deposition time it is fair to say that such presence would severely chill or inhibit the discovery process. The questioner is not likely to explore or pursue needed subjects and areas as he normally would if he learns that the answers may prejudice or damage his client or others if the answers are published before trial as indicative of the facts of the case.
*579 Such depositions are often arranged orally without formal notice for the convenience of counsel. Sometimes they are arranged on short notice and in such case it could be awkward to be required to give the Press reasonable notice. In addition, depositions are most often scheduled for a lawyer's or court reporter's office where space is limited. Without laboring it, most such places simply will not have sufficient accommodations to allow the presence of the media, especially in cases that the media would deem sensational or specially newsworthy. Moreover, it should be recognized that the right of access for the press is no greater than that of the general public. Pell v. Procunier and Howchins v. KQED, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). In other words, if the press can attend pretrial discovery depositions, so can the general public and this would only exacerbate the mentioned problem.
Finally, if media access should be required, it is reasonably predictable there will be collisions out of the presence of the court between counsel and the media as to access and the terms of it. These collisions will in many instances, we feel, require resolution by the court. This will require hearings, notice, counsel, orders, and the whole panoply. This will impose an additional work load on the judges and delay the prosecution.
We feel in sum that pretrial discovery depositions are but a part of pretrial preparation and as such are not a proper subject for press intrusion.
Finally, it seems to us that if those in higher authority believe in their wisdom that the Press should properly have the access for which they contend, we suggest that it should be accomplished by Supreme Court amendments to our rules of procedure, a matter within that court's purview and jurisdiction. See Art. V, § 2(a), Fla. Const. See dissent in State ex rel. Gore Newspaper Co. v. Tyson, 313 So.2d 777 at 790 (Fla. 4th DCA 1977), overruled on other grounds, English v. McCrary, 348 So.2d 293 (Fla. 1977). We presume to say this based on our holding here to the effect that there is now no constitutional, procedural, or substantive mandate for such access.
We, on our own motion, hereby certify to the Supreme Court of the State of Florida, pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(v), that the following questions are of great public importance:
1. IS THE PRESS ENTITLED TO NOTICE AND THE OPPORTUNITY AND RIGHT TO ATTEND PRETRIAL DISCOVERY DEPOSITIONS IN A CRIMINAL CASE?
2. IS THE PRESS ENTITLED TO ACCESS TO PRETRIAL DISCOVERY DEPOSITIONS IN A CRIMINAL CASE WHICH MAY OR MAY NOT HAVE BEEN TRANSCRIBED BUT WHICH HAVE NOT BEEN FILED WITH THE CLERK OF COURT OR THE JUDGE?
AFFIRMED.[4]
*580 DOWNEY, HERSEY, DELL and WALDEN, JJ., concur.
LETTS, J., concurs specially with opinion.
ANSTEAD, C.J., with whom HURLEY and BARKETT, JJ., join, dissents with opinion.
HURLEY, J., with whom GLICKSTEIN and BARKETT, JJ., join, dissents with opinion.
GLICKSTEIN, J., with whom HURLEY, J., joins, dissents with opinion.
LETTS, Judge, concurring specially:
I agree with the majority. I am also of the opinion that this en banc offering, to say the least, is already overcrowded with individual expression. Nonetheless I cannot resist brief comment of my own.
First of all, our Florida Supreme Court, rightly or wrongly, has flatly stated that the Press does not enjoy a constitutional right to attend pre-trial hearings. Miami Herald Publishing Co. v. Lewis, 426 So.2d 1, 6 (Fla. 1982). If it has no present constitutional right to attend pre-trial HEARINGS then, a fortiorari, it has no present constitutional right to attend pre-trial DEPOSITIONS. This current Supreme Court holding, which we must follow, and which in its turn followed Gannett Co., Inc. v. DePasquale, supra, is one of the reasons why the majority has affirmed and then sought to lay all doubt to rest by certifying the question.
As to the several dissenting views that the Press has a right to attend criminal depositions under Florida Rule of Civil Procedure 1.280(c)(5), I cannot accept them though the Federal cases cited are not inapt. To my way of thinking, the draftsmen of the Florida provisions concerning discovery, never in their wildest dreams contemplated that the protective order subsection would be so interpreted and certainly it does not expressly permit such a construction. Indeed, if I am wrong, then it must follow that the Press has the right to be present at all civil depositions in lawyers' offices. Even the Press does not advance such an argument in this appeal and I hope our Supreme Court will not countenance it.
Finally, the main dissent's admission that where depositions are involved, "the showing need not be of the same magnitude required to close a court hearing" means little to me unless I am told what lesser showing will be required. It is suggested that the right to actual presence might be substituted instead for a right to transcription if the Press pays for it. To me this is a distinction without much of a difference, except for dollars and cents.[5]
*581 ANSTEAD, Chief Judge, with whom HURLEY and BARKETT, Judges, join, dissenting:
I cannot agree with the majority's blanket denial of public access to pretrial criminal depositions. Respectfully, I believe the majority has placed the presumption, indeed a conclusive presumption, on the wrong side.[6] While I believe that the showing required to justify the closure of a deposition should be much less than that required to justify the closure of a court hearing or a trial, I nevertheless believe that there should be a presumption of public access to depositions taken after a public criminal prosecution is initiated and that the party seeking to exclude the public must convince the court that "closure is essential to preserve higher values and [that the terms of closure are] narrowly tailored to serve that interest." Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).
Without even considering the federal constitutional interests involved, it is clear that Florida has long recognized that "the people have a right to know what occurs in the courts." Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982). This right of access has been recognized not only in the case of trials and pretrial hearings, but also in the case of criminal depositions and even untranscribed tape recordings furnished as discovery by the state to the defendant in a criminal prosecution. Tallahassee Democrat, Inc. v. Willis, 370 So.2d 867 (Fla. 1st DCA 1979) and Satz v. Blankenship, 407 So.2d 396 (Fla. 4th DCA 1981), pet. for rev. denied, 413 So.2d 877 (Fla. 1982).
In Satz, this court construed the provisions of the Public Record Act, section 119.01, Florida Statutes (1979) to mandate public access to any discovery information possessed by the state once that information is disclosed to a criminal defendant:
[O]nce the tape recordings were given to [the defendant] the information no longer carried with it the legitimacy of law enforcement secrecy. At the point of disclosure, the information became public in a sense as public information, it lost its efficacy in deterring criminal activity. Accordingly, the trial court acted properly in releasing the tapes to appellee.
Id. at 398. For the life of me I do not see how we can mandate public access to an untranscribed tape recording and yet deny access to an untranscribed deposition. It is the public's right of access to the information that is crucial, not the particular form or container in which that information may be found.
Similarly, I cannot accept the totally technical and semantical distinction made by the majority between the right of access to a deposition transcribed and filed, a decision presumably made solely at the discretion of the lawyers involved, and a deposition taken but not transcribed. Again, it is the public's right to access to the information disclosed at the deposition that should be determinative. That determination should not be left to the unbridled discretion of the lawyers, either of whom presumably could order transcription without *582 the permission of the other or court order. Hence, poof!, "secret" information is transformed into "public" information.
The same observations may be made of the contentions that depositions are not "judicial proceedings."[7] Tell that to someone being tried for perjury or to someone seeking a qualified or absolute privilege in a defamation action. Depositions are taken by the invocation of all the same judicial authority that is called to bear when a witness is subpoenaed to testify in any official court proceeding. The public prosecution of a criminal defendant is a judicial proceeding and the compelled testimony of a witness taken prior to trial is an integral part of that judicial proceeding. The witness is compelled to attend by the service of a subpoena issued under the authority of the court. The witness is sworn to testify truthfully in that judicial proceeding and is subject to sanctions by the court for failure to appear, failure to testify, or failure to testify truthfully. That deposition is then subject to use for a multitude of purposes, including plea bargaining, use at pretrial hearings, and use at trial. Indeed, Florida, like virtually every other jurisdiction, has in essence a pretrial criminal justice system in which the overwhelming majority of cases are concluded without a trial. In most instances, then, the information disclosed through discovery will be the only information the public has about the facts of the case.[8] We must also keep in mind that there is nothing to prevent a defendant from taking a private statement from a witness out of the public's presence. It is only when the formal authority of the court is invoked by the use of a deposition that the invocation of the presumption of public access is necessary.
In my view, once the public's prosecutor elects to initiate a public prosecution, there should be a presumption of openness to all events that take place, including the taking of depositions.[9] The burden should be on *583 the one seeking to exclude the public's eye to establish an overriding interest in the maintenance of secrecy of the particular proceeding. As noted earlier, such a showing need not be of the same magnitude required to close a court hearing. The right and the value to access to those proceedings is markedly higher, arguably, than to access to depositions. Nevertheless, some showing should be made if the issue arises. Perhaps, in some instances, as in the case of the tape recording in Satz, the right of access will be limited to the right to have the deposition transcribed, at the expense of the public member seeking access. Indeed, since the public has no right to participate in the deposition, the right to transcription may be an attractive alternative to live attendance in many cases. This would also solve the litany of practical problems discussed in the majority opinion. Again, it is recognition of the right of public access to the information that should be the focus of concern.
As to the need for revision of our rules to accommodate access, the rules are already in place. The criminal rules as to depositions either closely parallel or incorporate by reference the rules of civil procedure pertaining to discovery. Both sets of rules require a party to secure a protective order if the discovery is to be conducted outside the public eye. The federal courts have explicitly interpreted similar federal rules to mandate public access absent a protective order:
As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings.
AT & T v. Grady, 594 F.2d 594 (7th Cir.1978). Florida Rule of Civil Procedure 1.280(c)(5) specifically provides that upon motion and for good cause shown a party may secure a protective order limiting those persons who may be present when a deposition is taken. This provision would certainly apply as well to criminal depositions where the rule expressly provides that the procedure for taking criminal depositions will be the same as in civil cases except as is expressly provided otherwise. Fla.R.Crim.P. 3.220(d). In short, we need not worry about devising new rules and procedures since it appears that the drafters of the rules contemplated that there might be times when the parties wanted to exclude others from a deposition and they had a good reason for doing so. I would do no more than mandate compliance with these rules, keeping in mind the public policy of this state in favor of disclosure. At the same time, however, I would do no less.
HURLEY, Judge, with whom GLICKSTEIN and BARKETT, Judges, join, dissenting.
The trial court predicated its order excluding the press from pretrial discovery depositions on the rationale that depositions are not judicial proceedings and, therefore, "there is no right to access by the public personally or the media to attend the taking of discovery depositions." By taking this blanket position, the court abrogated its responsibility under Rule 1.280(c)(5), Fla.R.Civ.P., to restrict attendance at discovery depositions only for good cause. The trial court's formulation relieves it of any necessity to exercise its discretion on a case-by-case basis. This, in my view, constitutes a departure from the essential requirements of law.
Discovery depositions in criminal cases are governed by Rule 3.220(d), Fla.R. Crim.P., which states that "[e]xcept as provided herein, the procedure for taking such deposition ... shall be the same as that provided in the Florida Rules of Civil Procedure." Rule 1.280(c)(5), Fla.R.Civ.P., in turn, authorizes a trial court, "for good cause shown," to order "that discovery be conducted with no one present except persons designated by the court... ." (Emphasis supplied.) Thus, the rules of court  not the common law nor the constitution  give rise to a presumption of openness for pretrial discovery. "As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." American Telephone & *584 Telegraph Co. v. Grady, 594 F.2d 594, 596 (7th Cir.1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979); see also Tavoulareas v. Washington Post Co., 737 F.2d 1170 (D.C. Cir.1984) (en banc); Broan Manufacturing Co. v. Westinghouse Electric Corp., 101 F.R.D. 773 (E.D. Wis. 1984).[10]
It is significant that the parties in this case attempted to establish good cause to exclude the press, but failed.[11] The trial court (a predecessor to the trial judge who entered the order on appeal) denied the state's motion without prejudice. Rather than reapply, the state entered into an agreement with the defense to take depositions of witnesses at various times and places unknown to the press. Indeed, the trial court expressly found that "the defendant and the State admit that it is their intent to avoid taking depositions with the News Media present." Only when the press realized that it had won a hollow victory, did it petition for the right to attend pretrial discovery depositions.
In my view, the parties should not be permitted to achieve through collusion what they could not obtain by court order. Litigation is not the parties' private preserve; it is conducted in a public forum subject to rules which embody public policy choices.[12] In the case at bar, first the parties and then the court chose to disregard the rule's presumption of openness. This constitutes a sufficiently serious error to justify issuing the writ and quashing the order. The trial court should be instructed to safeguard the openness of pretrial discovery unless and until good cause is established to justify a limitation. "Good cause," of course, is a flexible standard which can be adapted to meet the exigencies of individual cases. Inasmuch as attendance at pretrial discovery proceedings does not rest on the constitutional right of access, I too agree that good cause may be measured by a lesser standard than that required for closure of trial proceedings.
GLICKSTEIN, Judge, with whom HURLEY, Judge, joins, dissenting:
My learned colleagues who find no constitutional right of press access to pretrial discovery deposition proceedings are not in error. See, e.g., Tavoulareas v. Washington Post Co., 724 F.2d 1010, 1017 (D.C. Cir.), vacated on other grounds, 737 F.2d 1170 (1984) (en banc); Nixon v. Warner Communications, Inc., 435 U.S. 589, 608-10, 98 S.Ct. 1306, 1317-18, 55 L.Ed.2d 570 (1978); Zenith Radio Corp. v. Matushita Electric Industrial Co., 529 F. Supp. 866, 913-14 (E.D.Pa. 1981). It is likewise clear that at common law deposition documents were accessible to the public only after they were filed with the court. But, as both Judge Anstead and Judge Hurley point out, a presumption of openness of discovery proceedings apparently derives from our rules of procedure.
I decline to concur with Judge Anstead's opinion only because some of his discussion may be susceptible to the deduction some more fundamental basis for openness of *585 pretrial discovery proceedings exists than our rules of procedure. I concur with Judge Hurley's opinion because it finds the presumption of openness only by virtue of those rules.
It has been frequently stated that where a provision of Florida rules of procedure is substantially identical with a federal rule, we should use federal court decisions to illuminate our rule. E.g. Shooster v. Gelfand, 439 So.2d 1000, 1001 (Fla. 4th DCA 1983); Carson v. City of Fort Lauderdale, 173 So.2d 743, 744 (Fla. 2d DCA 1965). Here, Florida Rule of Criminal Procedure 3.220(d) adopts, for taking depositions, the procedure which is provided in our civil procedure rules, with exceptions not pertinent here. Rule 1.280(c), Florida Rules of Civil Procedure, which concerns protective orders pertaining to discovery, including depositions, is substantially identical with Federal Rule of Civil Procedure 26(c). Judge Hurley cites cases from two United States Circuit Courts of Appeal that clearly state the presumption, implied in the latter rule, that discovery proceedings are open unless a protective order for good cause has been obtained. Times Newspapers Limited conflicts, but it is older and the product of a trial court. In the circumstances I think we must recognize that the prevailing federal courts' construction of the federal rule is applicable as well to ours, since we do not know that in adopting the federal rule language our Supreme Court intended a different construction.
I agree that the questions of great public importance, as stated in the opinion for the court, should be certified to the Florida Supreme Court. They can tell us for certain what they intended when they adopted rule 1.280(c).
NOTES
[1] So that there may be no misunderstanding, we acknowledge the right of the Press to have access to the following:

A. Filed depositions because they then become part of the official court records. Tallahassee Democrat, Inc. v. Willis, 370 So.2d 867 (Fla. 1st DCA 1979)
B. The trial plus pretrial and posttrial proceedings conducted by or before the judge. Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).
[2] Following the preparation of this opinion, the case of Short v. Gaylord, 462 So.2d 591 (Fla. 2d DCA 1985), came to our attention. There, a trial court ruling which refused to exclude the press from attendance at pretrial discovery depositions in a criminal case was reviewed via certiorari proceedings. The Second District Court of Appeal held that such ruling was not a departure from the essential requirements of the law and it, therefore, denied certiorari. Accepting that the Short case and some of its pronouncements may conflict with our instant opinion, we do respectfully decline to accept or follow the precedent of the Short case.
[3] Of course, depositions taken to perpetuate testimony, different from discovery depositions, would be admissible. See Fla.R.Crim.P. 3.190(j).
[4] Having been afforded the privilege of reviewing the dissents filed by our colleagues prior to publication, we wish, not seeking the last word but in the interest of completeness, to offer a few additional comments so that the distinctions between our viewpoints may be finely drawn.

American Telephone & Telegraph Co. v. Grady, 594 F.2d 594 (7th Cir.1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979) is cited for the proposition that pre-trial discovery depositions are open to the public. An examination of that case reveals that it does so state. However, we dare to question the worth of that precedent inasmuch as such statement is, in our opinion, a pure ipse dixit in that it cites no authority for such conclusion. It has been tracked and cited by several trial court federal cases which, likewise, cite no authority or compelling reason for the stance, being content to simply cite American Telephone & Telegraph Co. v. Grady, supra.
Indeed, not all federal cases support open depositions. See Times News Ltd. v. McDonnell Douglas Corp., 387 F. Supp. 189 (1974), which held that depositions, as opposed to trials, are not open to public or press, and that neither the public or press has a right to be present.
The common thread which we divine from the dissenting opinions is that somehow the Florida Rules of Procedure as written command that public and press are entitled, as a matter of right to attend pretrial discovery depositions. It is here that we also part company.
Hoping not to be merely argumentative, we have searched the Rules and not found a mention of public and press or that they are entitled to notice and attendance at such depositions. We have dissected Florida Rule of Civil Procedure 1.280 and do not reach a conclusion that it serves that purpose. It is true that section (c) of that Rule provides for protective orders for many purposes, one of which is "(5) that discovery be conducted with no one present except persons designated by the court." We construe its application to be limited to instances where the parties do not agree and there is controversy between them as to who may be present. For example, this might be applicable where trade secrets or sensitive matters will be pursued or where one of the parties or his or her friends insist on being present and are disruptive. We do not read it that everybody, public and press, are entitled ipso facto to attend unless the court orders otherwise. To repeat, if the Rules are to be the avenue so opening up depositions, then the Rules in our opinion must be amended to specifically so state.
Finally, and hoping not to unduly labor the matter, we reject the suggestion that in this area the federal and Florida rules of procedure are so similar that the federal decisions as to federal rules necessarily bind Florida courts. Without comparing them rule by rule, we believe that there are significant differences. For instance, Rule 30(f)(1) of the Federal Rules pertains to the court reporter. It requires, with reference to depositions, that he or she shall certify it, securely seal it, and promptly file it with the court. Differently, our Florida Rule 1.310(f) does not require that a deposition be filed or even transcribed. See Tavoulareas v. Washington Post Co., 737 F.2d 1170 (D.C. Cir.1984) (en banc), and particularly footnotes 12 and 14.
[5] It perhaps could be argued that lack of actual presence might lessen the chilling effect referred to in the majority opinion. However, this argument is not advanced by the particular dissent.
[6] The ruling of the majority, in my view, conflicts with the very U.S. Supreme Court holding cited in support of the ruling. In Seattle Times Co. v. Rhinehart, ___ U.S. ___, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the Supreme Court implicitly recognized that the burden was on a party seeking to prevent public disclosure to secure a protective order:

We therefore hold that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.
104 S.Ct. 2199 at 2209-10. While upholding the protective order entered the Court nevertheless put the shoe on the right foot. Other federal courts have explicitly held that civil discovery depositions are open to the public absent a protective order to the contrary. AT & T v. Grady, 594 F.2d 594 (7th Cir.1978). If this is true in civil cases it must surely also apply to criminal cases where the public is in a very real sense a party to the proceedings and certainly has a greater interest in access to the proceedings.
[7] Fla.R.Crim.P. 3.220(d) provides:

Discovery Depositions. At any time after the filing of the indictment or information the defendant may take the deposition upon oral examination of any person who may have information relevant to the offense charged. The deposition shall be taken in a building where the trial may be held, such other place agreed upon by the parties or where the trial court may designate by special or general order. The party taking the deposition shall give written notice to each other party. The notice shall state the time and place the deposition is to be taken and the name of each person to be examined. After notice to the parties the court may, for good cause shown, extend or shorten the time and may change the place of taking. Except as provided herein, the procedure for taking such deposition, including the scope of the examination, shall be the same as that provided in the Florida Rules of Civil Procedure. Any deposition taken pursuant hereto may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. The trial court or its clerk shall, upon application, issue subpoenas for the persons whose depositions are to be taken. A resident of the State may be required to attend an examination only in the county wherein he resides, or is employed, or regularly transacts his business in person. A person who refuses to obey a subpoena served upon him may be adjudged in contempt of the court from which the subpoena issued.
[8] As Justice Stevens noted in concurrence in Press-Enterprise,

[T]he distinction between trials and other official proceedings is not necessarily dispositive, or even important, in evaluating the First Amendment issues....
The focus commanded by the First Amendment makes it appropriate to emphasize the fact that the underpinning of our holding today is not simply the interest in effective judicial administration; the First Amendment's concerns are much broader. The "common core purpose of assuring freedom of communication on matters relating to the functioning of government," Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 [100 S.Ct. 2814, 65 L.Ed.2d 973] (1980) (plurality opinion), that underlies the decision of cases of this kind provides protection to all members of the public "from abridgment of their rights of access to information about the operation of their government, including the Judicial Branch." Id., at 584, 100 S.Ct. at 2831 (Stevens, J., concurring).
[9] Some proceedings are closed by statute. For example see Florida Statutes, Section 905.24 (grand jury proceedings); Section 934.08 (information gained through wiretaps). Section 934.091 (names of subjects of wiretaps). Also see Satz case cited in body of opinion for secrecy of police investigatory files.
[10] Federal case law is persuasive in this area because the Florida Rules of Civil Procedure are patterned after the federal rules. See In re Estate of Zimbrick, 453 So.2d 1155 (Fla. 4th DCA 1984) (en banc); Tallahassee Democrat, Inc. v. Willis, 370 So.2d 867 (Fla. 1st DCA 1979). The majority notes that Florida does not have any appellate decisions directly on point. Ante, at 573. There are, however, several reported trial court decisions which uphold the right of the press to attend pretrial discovery depositions. See Cazarez v. Church of Scientology, 6 Med.L. Rptr. 2109 (Fla. 6th Cir.Ct. 1980); State v. Diggs, 5 Med.L.Rptr. 2596 (Fla. 11th Cir.Ct. 1980); State v. Alford, 5 Med.L.Rptr. 2054 (Fla. 15th Cir.Ct. 1979); State v. Bundy, 4 Med.L.Rptr. 2629 (Fla. 2d Cir.Ct. 1979).
[11] The state filed a motion for a protective order pursuant to Rule 1.280(c)(5), Fla.R.Civ.P. Although the defense decided not to join in the motion, counsel indicated that he did not oppose it. Moreover, his remarks indicate that he favored the motion.
[12] "These policies relate to the public's right to monitor the functioning of our courts, thereby insuring quality, honesty, and respect for our legal system." In re Continental Illinois Securities Litigation, 732 F.2d 1302, 1308 (7th Cir.1984).