497 So.2d 652 (1986)
FLORIDA FREEDOM NEWSPAPERS, INC., Petitioner,
v.
Honorable Robert L. McCRARY, Jr., Circuit Judge, Fourteenth Judicial Circuit, State of Florida, Respondent.
No. BM-47.
District Court of Appeal of Florida, First District.
July 1, 1986.
On Motion for Rehearing October 29, 1986.
William A. Lewis of Sale, Brown & Smoak, Panama City, for petitioner.
Jim Smith, Atty. Gen., Lewis F. Hubener, Asst. Atty. Gen., Tallahassee, for respondent.
C. Gary Williams, Michael J. Glazer of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for amicus curiae, Tallahassee Democrat, Inc.
John D. Simpson, Marianna, for amicus curiae Dale Sims.
Floyd A. Griffith of Griffith & Griffith, Marianna, for amicus curiae Gordon Hartley, Jr.
ERVIN, Judge.
Florida Freedom Newspapers, Inc. (Florida Freedom), has filed with this court a petition, pursuant to Florida Rule of Appellate Procedure 9.100(d), to review an order precluding the press's access to certain transcribed statements, furnished through discovery, and prohibiting extra-judicial comment by certain state and county agents during the pendency of two criminal cases now before the circuit court of Jackson County, State v. Hartley and State v. Sims. For the reasons recited infra, we deny the petition.
In December 1985, the Panama City News Herald, one of petitioner's newspapers, began publishing a series of articles *653 pertaining to alleged jailer mistreatment and abuse of prisoners in the Jackson County Jail. Other area newspapers thereafter followed up with stories regarding the alleged incidents. Subsequently, several correctional officers were arrested and charged with various offenses, ranging from aggravated child abuse to jailer malpractice. Petitioners Sims and Hartley, two of the jailers involved, were charged with the above offenses.
In March 1986, Sims and Hartley filed motions to control prejudicial pretrial publicity to prevent public disclosure of transcribed statements of jail inmates and sheriff's office personnel, which were to be furnished by the state attorney to the defendants following their demand for discovery under Rule 3.220, Florida Rules of Criminal Procedure, and to prohibit any comments pertaining to the cases by defense counsel, members of the State Attorney's Office, the Jackson County Sheriff's Office, and various other individuals.
Following a hearing on the motions, the trial court entered its initial order prohibiting the state attorney from disclosing to the public any discovery documents furnished to the defendants without first submitting them to the court for in camera inspection for the purpose of determining whether the defendants' constitutional rights would be adversely prejudiced by public disclosure. The court also prohibited the state attorney's office, the Jackson County Sheriff's Office, and the Clerk of the Fourteenth Judicial Circuit from making any out-of-court statement "relating to the trial of these causes or the parties or issues in said trials."
After conducting an in camera inspection of the discovery documents, the court, adhering to its earlier ruling, entered orders prohibiting public disclosure of all discovery documents furnished to the defendants, except the state's form response to discovery and the state's letter to the defendants' attorneys advising what documents have been furnished, until such time as the danger of prejudice to the defendants no longer exists. The court also directed that all future discovery documents be inspected in camera to determine their effect on defendants' constitutional rights. The April orders slightly modified the earlier gag orders, prohibiting personnel of the State Attorney's Office, and personnel of the Jackson County Sheriff's Office from making any out-of-court statement regarding the events giving rise to the crimes charged or the parties or issues involved in the trials until the threat of prejudice to the defendants no longer exists. A similar prohibition directed to the clerk of the trial court and his employees was removed. In support of its orders, the court concluded:
[T]here has been widespread publicity which is prejudicial to the [defendants'] right to receive a fair trial free from outside influences ... and right to be tried before an impartial jury in Jackson County, Florida. The disclosure of the discovery documents ... would open to the press additional volumes of information not previously made public. The public dissemination of this additional information poses a serious and imminent threat to the administration of justice requiring temporary nondisclosure of the discovery documents.
(emphasis supplied)
The primary issue before us is whether the press is entitled to access to pretrial transcribed statements taken by the state and furnished to the defendants pursuant to their demand for discovery. The answer to this question involves a balancing of the rights of the respective parties. This court has previously held that "[t]he right of the news media and the public to know all that transpires in a criminal case ... must be carefully weighed against the defendant's right to a fair trial, but the defendant's right to a fair trial should be given paramount consideration." State ex rel. Tallahassee Democrat v. Cooksey, 371 So.2d 207, 209 (Fla. 1st DCA 1979) (e.s.). It is also well recognized that "any form of prior restraint comes to this court bearing a heavy presumption against its constitutional validity". *654 Miami Herald Publishing Co. v. Morphonios, 467 So.2d 1026, 1028 (Fla. 3d DCA 1985).
Florida Freedom, citing to Satz v. Blankenship, 407 So.2d 396 (Fla. 4th DCA 1981), pet. rev. den., 413 So.2d 877 (Fla. 1982), argues that once the state releases the statements to the defendants, the Public Records Act, Chapter 119,[1] requires disclosure of these documents to the press. Accord Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775 (Fla. 4th DCA 1985). We have no quarrel with the Satz rule, but we would also observe that Satz explicitly states that it did not consider the impact of prejudicial pretrial publicity on a defendant's constitutional rights, because such issue was not raised at the trial level. Under the circumstances presented here, we are of the view that the Public Records Law and the press's right of access under the First Amendment are properly subject to the inherent power of the court to preserve a defendant's right to a fair trial. See State ex rel. Times Publishing Company v. Patterson, 451 So.2d 888, 891 (Fla. 2d DCA 1984). The Florida Supreme Court has recognized that "a trial court has the inherent power to control the conduct of the proceedings before it, and it is the trial court's responsibility to protect a defendant in a criminal prosecution from inherently prejudicial influences which threaten fairness of his trial and the abrogation of his constitutional rights." State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 909 (Fla. 1976) [footnotes omitted]. We conclude, based upon the following comments by the court below, that it appropriately struck the balance in favor of the defendants' right to a fair trial under the Sixth Amendment:
This Court finds that these documents become public records when they are furnished to the Defendant[s]. Satz v. Blankenship, 407 SO. [sic] 2d, 396 (Fla. 4th DCA 1981). This Court finds and concludes that the constitutional rights of the Defendant[s] ... are controlling over any and all provisions of Chapter 119, Florida Statutes, pertaining to public records and that this Court has authority pursuant to Rule 3.220(h), Florida Rules of Criminal Procedure, to restrict or defer specified disclosures during discovery upon showing of good cause.
As further grounds for relief, Florida Freedom contends that the defendants have not met their burden of proof in meeting the requirements of the three-pronged test announced in Miami Herald Publishing Company v. Lewis, 426 So.2d 1, 3 (Fla. 1982), relating to the propriety of closure of pretrial proceedings and the temporary sealing of court records. See also Bundy v. State, 455 So.2d 330, 338 (Fla. 1984). In Lewis, the Florida Supreme Court stated that one who seeks to close a pretrial proceeding or seal the record in a criminal case must establish:
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No alternatives are available, other than change of venue, which would protect a defendant's right to a fair trial; and
3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
Lewis, 426 So.2d at 3. Unlike the case at bar, the closure sought in Lewis related to a denial of the public's right of access to a hearing on a motion to suppress a defendant's confession in a homicide case. In the case at bar, the press is not seeking access to a judicial proceeding, but rather the disclosure of certain transcribed statements in the defendants' possession obtained during the discovery phase of a pending criminal case, which may or may not be admissible as evidence at any judicial proceeding before the trial judge.
The Fourth District Court of Appeal in Palm Beach Newspapers v. Burk, 471 So.2d 571, *655 578 (Fla. 4th DCA 1985) (en banc) (pending Florida Supreme Court, case no. 67,352), found this distinction to be crucial in holding that the three-pronged test enunciated in Miami Publishing Co. v. Lewis "is not applicable to pretrial discovery proceedings such as discovery depositions because, among other things, the taking of such depositions is not a judicial proceeding since the judge is not in attendance and since the deposition cannot be received in evidence." (e.s.) In so holding, Palm Beach quoted from the U.S. Supreme Court in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33-34, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17, 27 (1984):
[A]n order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny... . In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.
Palm Beach concluded that "pretrial discovery depositions are but a part of pretrial preparation and as such are not a proper subject for press intrusion." Id. at 579. Accord Post-Newsweek Stations v. State, 474 So.2d 344 (Fla. 3d DCA 1985) (no constitutional, procedural or substantive right of the public or the media to attend pre-trial depositions in criminal cases, accordingly, the three-pronged Lewis test for determining the appropriateness of closure is inapplicable). The information sought to be disclosed in the case at bar is even less subject to the right to access than that involved in Palm Beach. Here, we have information initially obtained by the state attorney  not through discovery procedures  but in the regular course of investigation, and then subsequently produced pursuant to discovery. Accordingly, we adopt the reasoning in Palm Beach and hold the Lewis test does not apply to pre-trial transcribed statements furnished to the defendants pursuant to their demand for discovery under Rule 3.220, Florida Rules of Criminal Procedure. If, however, the discoverable statements had been filed with the trial court, the three-pronged test would have applied. Cf. Palm Beach, 471 So.2d at 575, citing to Tallahassee Democrat v. Willis, 370 So.2d 867 (Fla. 1st DCA 1979) (act of filing deposition document triggers press's right of access); Seattle Times Co. v. Rhinehart, 467 U.S. at 33, 104 S.Ct. at 2208 (restraints placed on discovered information, although not yet admitted, is not a restriction on a traditional public source of information).
Since no First Amendment right is implicated by the orders before us, the issue is whether there is cause shown under Florida Rule of Criminal Procedure 3.220(h) to both prohibit public access to the transcribed statements, and restrict extrajudicial comment regarding the pending criminal cases.[2] To conclude, we find no departure from the essential requirements of law in the court's orders.[3] Accordingly, we approve the following language in one of the orders on review and publish it as part of our opinion:
Good cause has been shown. Publicity of the discovery documents poses special risks of unfairness because it may influence public opinion against this defendant and inform potential jurors of inculpatory information inadmissible at the actual trial. It is difficult at the discovery stage of these proceedings to measure the effects of prejudicial publicity on the fairness of the trial. To safeguard the defendant's right to receive a fair trial, this Court has a constitutional duty to minimize the effects of prejudicial pretrial publicity. Because of the *656 constitution's pervasive concern for these rights, this Court may take protective measures even when they are not strictly and inescapably necessary.
* * * * * *
... This Court has further considered alternatives which would protect this Defendant's right to a fair trial free from outside influences in Jackson County other than temporary nondisclosure of the discovery documents herein. These alternatives include increasing the number of preemptory challenges of prospective jurors; instructing the jury that they are to totally disregard anything they have read or heard about these cases; permitting individual voir dire of prospective jurors and sequestration of the jury. The Court finds and concludes that none of these measures would be sufficient to overcome the volumes of information that would be subject to dissemination by the press and the probable effect of public dissemination upon the minds of prospective jurors. A change of venue should not be considered because it has not been requested and the Defendant has asserted his constitutional right to be tried in Jackson County. The granting of a motion for continuance each time prejudicial information is published to allow the threat of prejudice to dissipate would affect the Defendant's constitutional right to a speedy trial.
... The Court further finds and concludes that temporary nondisclosure of the discovery documents herein would be effective in protecting the rights of the Defendant herein without being broader than necessary. When the threat of prejudice dissipates, for example, upon sequestration of a jury, the press may publish the contents of the discovery documents relevant to that case. The denial of access is only temporary, until the threat subsides. The Court notes that the press has access to the names and addresses of each prospective witness herein and may interview each of them except those prohibited from making out of court statements set forth in the final paragraph of this Court's Order dated March 13, 1986, as modified herein. This Court has not prohibited the press from attending any judicial proceedings or sealed the record of a judicial proceeding, or prohibited the press from publishing information within its possession.
Petition DENIED.
BOOTH, C.J., and THOMPSON, J., concur.

ON MOTION FOR REHEARING
ERVIN, Judge.
Pursuant to our opinion denying Florida Freedom Newspapers' petition for writ of certiorari, the petitioner newspaper filed a Motion for Rehearing or Clarification. Our decision to deny the petition for writ of certiorari stands as rendered. We grant Petitioner's Motion for Clarification, however, in order to alleviate any possible misinterpretations which the petitioner foresees.
The order from which the petitioner sought review encompasses two separate issues: First, the preclusion of the media's access to certain transcribed statements, furnished through discovery; second, the prohibition of extrajudicial comment by certain state and county agents during the pendency of two criminal cases before the circuit court. Clearly, the order involves a balancing of the equally important First Amendment right of freedom of the press against the defendant's Sixth Amendment right to a speedy and public trial by an impartial jury. Because these two issues involve distinct First Amendment considerations, though, it is necessary to consider them separately.
The first issue, whether the press is entitled to access to pretrial transcribed statements taken by the state within the course of its investigating powers and furnished to the defendants pursuant to their demand for discovery, involves a balancing of the rights of the respective parties. In this case, the press has not sought access to a judicial proceeding, but rather the disclosure *657 of pretrial discovery material. Both the United States Supreme Court and the Florida Supreme Court have differentiated between the traditional right to access to trial proceedings and the right to access to such pretrial materials as are requested in the case at bar. This delineation is set forth in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), wherein the Court stated:
In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.
467 U.S. at 33-34, 104 S.Ct. at 2207-2208 (emphasis supplied). Since no traditional First Amendment right is implicated by that portion of the order which prohibits the petitioner's access to pretrial discovery documents, the defendant's paramount right to a fair trial before impartial jurors prevails.
The second portion of the order, that which prohibits extrajudicial comment  the so-called "gag order"  does implicate both traditional First and Sixth Amendment values. In issuing his order, the trial judge struck the appropriate balance between the two competing interests. The order prohibited extrajudicial comment by certain state and county agents during the pendency of the trial. This prohibition can be distinguished from a prior restraint on publication, and, as such, is distinguishable from the United States Supreme Court's opinion in Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), in which, it was recited, the respondent state district judge entered an order restraining petitioners from publishing or broadcasting accounts of confessions or admissions made by the accused or facts "strongly implicative" of the accused. In disapproving the restraints imposed, the Court concluded that it was the trial judge's responsibility to take measures consistent with First Amendment values that would mitigate the effects of pretrial publicity. The Court then outlined several alternatives which a judge can employ short of prior restraint on publication. Although not specifically enumerated in the list of alternatives, the Court observed that a prohibition on extrajudicial comment was also an alternative measure short of prior restraint:
This court has outlined other measures short of prior restraints on publication tending to blunt the impact of pretrial publicity... . Professional studies have filled out these suggestions, recommending that trial courts in appropriate cases limit what the contending lawyers, the police, the witnesses may say to anyone.
Nebraska Press Association v. Stuart, 427 U.S. 539, 564, 96 S.Ct. 2791, 2805 (citations omitted). Although certain court and state officials in Florida Freedom have been prohibited from making certain statements, the press itself is not subjected to the strict "prior restraint" on publication which was present in Nebraska Press. Thus, not only are the standards set forth in Nebraska Press inapplicable to the facts of the case at bar, but it is equally clear that the Nebraska Press decision considers a restriction on extrajudicial comment as an alternative to prior restraint on publication.
The Florida Supreme Court, in State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1977), also recognized that judicial restrictions on extrajudicial comment are within the power of the trial judge:
Limitations placed upon lawyers, litigants and officials directly affected by court proceedings may be made at the court's discretion... . Muzzling lawyers who may wish to make public statements ... has long been recognized as within the court's inherent power to control professional conduct.
340 So.2d at 910. We therefore conclude that the trial court acted within its inherent power in issuing the order precluding access to pretrial discovery documents and in prohibiting extrajudicial comment. The Petitioner's Motion for Rehearing is denied. *658 The Motion for Clarification is granted to the extent that our original opinion is modified as indicated by this opinion.
BOOTH, C.J., and THOMPSON, J., concur.
NOTES
[1] Section 119.011(3)(c)(5), Florida Statutes, provides in part:

"Documents given or required by law or agency rule to be given to the person arrested" are subject to public inspection.
[2] "Limitations placed upon lawyers, litigants and officials directly affected by court proceedings may be made at the court's discretion for good cause to assure fair trials." State ex rel. Miami Herald Publishing Company v. McIntosh, 340 So.2d 904, 910 (Fla. 1976).
[3] Both orders on review were entered by respondent, Honorable Robert L. McCrary, Circuit Judge.